IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **MERRIMAN BELL,** | ] |
| Plaintiff, | ] |
| v. | ] |
| | ]  CASE No.: 2:12-CV-2590-KOB |
| **CITY OF BIRMINGHAM, ALABAMA,** | ] |
| Defendant. | ] |

**MEMORANDUM OPINION**

Plaintiff Merriman Bell brought this lawsuit against the City of Birmingham under 42 U.S.C. § 1983 and Title VII of the Civil Rights Act of 1964, codified at 42 U.S.C. § 2000e *et seq.* (Doc. 1). Officer Bell alleges that the City of Birmingham discriminated against him on the basis of his race by denying him a position as a Motor Scout following his successful completion of Motor Scout School. Officer Bell also alleges that the City of Birmingham retaliated against him for filing grievances with the Personnel Board of Jefferson County and the Equal Employment Opportunity Commission ("EEOC"). This matter is before the court on "Defendants' Motion for Summary Judgment." (Doc. 40). For the reasons discussed below, this court concludes that the City's motion for summary judgment is due to be GRANTED as to Officer Bell's § 1983 claim and Title VII discrimination claim. The City's motion for summary judgment is due to be DENIED as to Officer Bell's Title VII retaliation claim.

**I. STANDARD OF REVIEW**

Summary judgment is an integral part of the Federal Rules of Civil Procedure. Summary

1

judgment allows a trial court to decide cases when no genuine issues of material fact are present and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56. When a district court reviews a motion for summary judgment, it must determine two things: (1) whether any genuine issues of material fact exist; and if not, (2) whether the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56). The moving party can meet this burden by offering evidence showing no dispute of material fact or by showing that the non-moving party's evidence fails to prove an essential element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322–23. Rule 56, however, does not require "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.*

Once the moving party meets its burden of showing the district court that no genuine issues of material fact exist, the burden then shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Disagreement between the parties is not significant unless the disagreement presents a "genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). In responding to a motion for summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material fact." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

475 U.S. 574, 586 (1986).  The non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a *genuine issue for trial*.'"  *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)) (emphasis added); *see also* Advisory Committee Note to 1963 Amendment of Fed. R. Civ. P. 56(e) ("The very mission of summary judgment procedure is to pierce the pleadings and to assess the proof to see whether there is a genuine need for trial."). The moving party need not present evidence in a form admissible at trial; "however, he may not merely rest on [the] pleadings."  *Celotex*, 477 U.S. at 324.  If the evidence is "merely colorable, or is not significantly probative, summary judgment may be granted."  *Anderson*, 477 U.S. at 249–50 (citations omitted).

In reviewing the evidence submitted, the court must "view the evidence presented through the prism of the substantive evidentiary burden," to determine whether the nonmoving party presented sufficient evidence on which a jury could reasonably find for the nonmoving party.  *Anderson*, 477 U.S. at 254; *Cottle v. Storer Commc'n, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988).  The court must refrain from weighing the evidence and making credibility determinations, because these decisions fall to the province of the jury.  *See Anderson*, 477 U.S. at 255; *Stewart v. Booker T. Washington Ins. Co.*, 232 F.3d 844, 848 (11th Cir. 2000); *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999).  "Even if a district court 'believes that the evidence presented by one side is of doubtful veracity, it is not proper to grant summary judgment on the basis of credibility choices.'"  *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1252 (11th Cir. 2013)  (citing *Miller v. Harget*, 458 F.3d 1251, 1256 (11th Cir. 2006)).  The court should not disregard self-serving statements made in sworn testimony simply

because they are self-serving at the summary judgment stage, and if the self-serving statements create a genuine issue of material fact, the court should deny summary judgment on that basis. *Id.* at 1253.

Furthermore, all evidence and inferences drawn from the underlying facts must be viewed in the light most favorable to the non-moving party. *Graham*, 193 F.3d at 1282. The nonmoving party "need not be given the benefit of every inference but only of every reasonable inference." *Id.* The evidence of the non-moving party "is to be believed and all justifiable inferences are to be drawn in [its] favor." *Anderson*, 477 U.S. at 255. After both parties have addressed the motion for summary judgment, the court must grant the motion *if* no genuine issues of material fact exist *and if* the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56.

## II. STATEMENT OF FACTS

Officer Merriman Bell, a black male, has been a police officer with the City of Birmingham Police Department since 1998. In 2009, Officer Bell joined the Police Department's Tactical Unit. The Tactical Unit is an elite group of officers with various specialties and positions, one of which is the Motor Scout position. Motor Scouts are police officers who are assigned motorcycles and, in addition to performing their normal policing duties, provide escorts for special events like football games, funerals, and parades. Because of the dangers associated with the position, Motor Scout are afforded a five-percent hazard pay increase. Motor Scouts also receive the additional benefit of being permitted to use a police motorcycle to commute to and from work. To become a Motor Scout, a police officer must apply for Motor Scout School, pass an entrance exam, and successfully complete the course. The record is unclear how the Birmingham Police Department decides when to hold a Motor Scout

School.  What is clear, however, is that officers who successfully complete Motor Scout School are typically assigned a motorcycle within a few months of completing the course.

In 2010, Officer Bell applied to become a Motor Scout and was admitted to Motor Scout School.  After failing on his initial attempt, Officer Bell successfully completed Motor Scout School in August of 2010.  Officers Montague Minnifield, a black male, Alex Thomas, a white male, and Jason Lawley, a white male, also attended the August 2010 Motor Scout School and successfully completed the course with Officer Bell.  After graduating from the school, the officers waited to be assigned motorcycles.  At some point while the officers were waiting, Officer Thomas received a text message from a lieutenant in the department informing him that he was guaranteed a Motor Scout position but Officers Bell and Minnifield would have to compete for a single position.  No one in the record testified to having personally seen this text message, and no evidence exists as to which lieutenant allegedly sent the text message.  The only evidence of the existence of the text message is Officer Bell's testimony that Officer Minnifield told him about the message after seeing it on Officer Thomas's phone.

After learning about the text message, Officer Bell complained to Sergeant Donald Webber about what he viewed as the Department's racially motivated decision to guarantee Officer Thomas a Motor Scout position.  Officer Bell also told Sergeant Webber that he was considering taking legal action against the Department.  The acting police chief during this time was Moody Duff, a black male.  Sergeant Webber told Officer Bell that Chief Duff had responded to his threat of pursuing legal action by saying "bring it on." (Doc. 41–1, at 41).

On August 11, 2011, Officers Bell and Minnifield filed employee grievances with the Personnel Board of Jefferson County.  The Board determined that the grievances were not

eligible to be heard through the grievance procedure and issued a letter to that effect. Officer Bell then filed a charge of discrimination with the EEOC on November 4, 2011.

In response, Chief Duff stated that because Officer Bell and Officer Minnifield had filed grievances and EEOC charges, "no movement would be made on the motor scouts." (Doc. 41–1, at 33–34). Chief Duff then told Officers Bell, Minnifield, Lawley, and Thomas that they would all have to retake Motor Scout School before being assigned a Motor Scout position. This decision marked the first time an officer who successfully completed Motor Scout School was not assigned a Motor Scout position, and also the first time that a successful Motor Scout School graduate was ever required to retake the course.

Although the officers protested, Officers Bell, Minnifield, and Thomas eventually chose to repeat the course. The next Motor Scout School was held in February of 2012, and all three of the officers once again successfully completed the course. On April 20, 2012, the Birmingham Police Department assigned Officer Bell a Motor Scout position, and he received the accompanying five-percent pay increase. Officer Minnifield and Thomas also received Motor Scout positions shortly after graduating.

On June 6, 2012, the EEOC dismissed Officer Bell's EEOC charge and issue him a Notice of Right to Sue. On July 31, 2012, Officer Bell brought the current suit against the City of Birmingham.

### III.  DISCUSSION[1]

A. **Count 1: The § 1983 Claim**

In Count I of his complaint, Officer Bell brings a § 1983 claim for race discrimination and retaliation in violation of the Fourteenth Amendment.  (Doc. 1).  As a preliminary matter, Officer Bell failed to respond to any of the City of Birmingham's arguments regarding the § 1983 claim.  By failing to address the § 1983 claim, Officer Bell abandoned that claim against the City. *See Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 971 n.36 (11th Cir. 2008) ("[Plaintiff] did not defend the claim on summary judgment, he thus abandoned it."); *Road Sprinkler Fitters Local Union No. 699 v. Indep. Sprinkler Corp.*, 10 F.3d 1563, 1568 (11th Cir. 1994).

Nevertheless, even assuming Officer Bell had not abandoned his § 1983 claim, the City would still be entitled to summary judgment on the claim.  Section 1983 does not create any substantive rights in itself but only creates a remedy for violation of other federal law.  *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617–18 (1979).  For a municipality to be held liable under § 1983, a plaintiff must show that he was deprived of a federal right by a person acting under color of state law.  *Patrick v. Floyd Med. Ctr.*, 201 F.3d 1313, 1315 (11th Cir. 2000).  Under this color-of-state-law requirement, a municipality can only be held liable under § 1983 when the plaintiff's injury results from a government policy or custom.  *See Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 694 (1978); *Gold v. City of Miami*, 151 F.3d

---

[1] This case was originally brought jointly by Officer Minnifield and Officer Bell, and contained four counts, with Counts II and IV pertained solely to Officer Minnifield.  On April 29, 2014, this court severed the claims of Officer Bell and Officer Minnifield.  (Doc. 37).  Thus, this court will only address Counts I and III in this opinion.

1346, 1350 (11th Cir. 1998) ("[A] municipality may be held liable [under § 1983] for the actions of [an employee] only when municipal 'official policy' causes a constitutional violation."). A "custom" is a practice "so pervasive and well-settled that it assumes the force of law." *Denno*, 218 F.3d at 1276.

In the present case, Officer Bell fails to present any evidence that Chief Duff's decision to require Officer Bell to repeat Motor Scout School was pursuant to any policy or custom. The City of Birmingham adheres to an Equal Employment Opportunity Policy that prohibits race discrimination in all personnel decisions. Thus, assuming as Officer Bell alleges that Chief Duff's decision was racially motivated, the City's actions could not be pursuant to any official policy. Likewise, the record is devoid of any evidence that the City's actions were pursuant to any "pervasive and well-settled" custom. Accordingly, the City of Birmingham cannot be held liable on Officer's Bell claim under § 1983 and is entitled to summary judgment on this claim.

**B.     Count III: The Title VII Claims**

Title VII prohibits employers from "discriminat[ing] against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e2(a)(1). In Count III, Officer Bell alleges race discrimination and retaliation based on the Birmingham Police Department's failure to place Officer Bell in a Motor Scout position for more than two years despite the fact that he was qualified for the position.

   **1. Disparate Treatment Claim**

Officer Bell may establish a prima facie case for disparate treatment through either direct evidence of discrimination or circumstantial evidence using the *McDonnell Douglas* framework.

*See Bryant v. Jones*, 575 F.3d 1281, 1307 (11th Cir. 2009).  Because Officer Bell does not point to any direct evidence of racial discrimination, this court must use the *McDonnell Douglas* framework to analyze his claim.  Under this framework, a plaintiff disparate treatment must first establish a prima facie case by "show[ing] (1) []he belongs to a protected class; (2) []he was qualified to do the job; (3) []he was subjected to adverse employment action; and (4) [his] employer treated similarly situated employees outside [his] class more favorably." *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008).  If the plaintiff establishes a prima facie case, the burden of production shifts to the defendant to articulate some legitimate, non-discriminatory reason for the adverse employment action.  *See Goldsmith v. City of Atmore*, 996 F.2d 1155, 1163 (11th Cir. 1993); *Bryant v. Jones*, 575 F.3d 1281, 1308 (11th Cir. 2000).  If a defendant meets this burden of production, it rebuts the presumption of discrimination, and the plaintiff then bears the burden of proving that the defendant's arguments are "merely pretext to mask discriminatory actions." *Bryant*, 575 F.3d at 1308.

In the present case, the City concedes that Officer Bell satisfies the first two elements of the prima facie case, but contends that Officer Bell has not made a showing sufficient to meet the last two elements—that Officer Bell suffered an adverse employment action and that a similarly situated employee outside of Officer Bell's protected class was treated more favorably.  Because Officer Bell fails to meet the fourth element, this court will not address whether Officer Bell suffered an adverse employment action.

Typically, a plaintiff fails to meet the fourth element of his prima facie case because the comparator he identifies is not actually similarly situated.  In this case, however, the issue is not that Officer Bell's comparator, Officer Alex Thomas, is not similarly situated; instead, the issue

is that Officer Thomas did not receive more favorable treatment than Officer Bell.  As the City points out, Officer Thomas successfully completed the same Motor Scout School as Officer Bell in August of 2010 and, like Officer Bell, was not assigned a position as a Motor Scout.  Both Officer Bell and Officer Thomas were required to retake the Motor Scout School, and both were assigned positions as Motor Scouts after repeating the school.  Thus, the record shows that Officer Thomas received the same treatment as Officer Bell.

Officer Bell once again fails to offer any response to the City's argument.  Therefore, Officer Bell has abandoned this claim.  However, even if he had not abandoned the claim, the City of Birmingham would still be entitled to judgment on this claim because Officer Bell failed to produce evidence that a similarly situated employee outside of his protected class received more favorable treatment than he did.  Because he has not met his burden of establishing a prima facie case of discrimination, the City of Birmingham is entitled to summary judgment on this claim.

### 2.     Retaliation Claim

Title VII prohibits employers from retaliating against an employee "because he has opposed any practice made an unlawful employment practice by [Title VII]. . . ." 42 U.S.C. § 2000e-3(a). Title VII retaliation claims based on circumstantial evidence are governed by the *McDonnell Dougals* framework discussed above.  *See Brown v. Ala. Dep't of Transp.*, 597 F.3d 1160, 1181 (11th Cir. 2010).  A plaintiff can establish a prima facie case of retaliation by showing that "(1) []he engaged in an activity protected under Title VII; (2) []he suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action." *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008).

Once the plaintiff meets this burden, the employer has an opportunity to articulate a legitimate non-retaliatory reason for its employment action, which the plaintiff can rebut with evidence of pretext. *Brown*, 597 F.3d at 1181–82.

In the present case, the City of Birmingham concedes that Officer Bell engaged in protected activity when he complained about what he viewed as the Police Department's racially motivated decision to guarantee Officer Thomas a Motor Scout position. The City, however, argues that Officer Bell has not present sufficient evidence to satisfy the final two elements of his prima facie case—that Officer Bell suffered an adverse employment action and that the action was causally connected to Officer Bell's protected activity.

To establish an adverse employment action, a plaintiff must show that the employer's action would "dissuade[] a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotations omitted). Whether an employment action is adverse "depends upon the circumstances of the particular case, and should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances." *Id.* at 70–71. The Eleventh Circuit has recognized that Supreme Court precedent on this issue "strongly suggests that it is for a jury to decide whether anything more than the most petty and trivial actions against an employee should be considered 'materially adverse' to him and thus constitute adverse employment actions." *Crawford*, 529 F.3d at 973–74 n.13.

In the present case, Officer Bell alleges that he suffered an adverse employment action because the Birmingham Police Department denied him a Motor Scout position following his complaints to the Personnel Board of Jefferson County and the EEOC. Officer Bell points out

that the Motor Scout position is a prestigious position and includes a five-percent hazardous pay increase as well as the privilege of using a police motorcycle to commute to and from work. Based upon this evidence, a reasonable jury could find that the denial of a Motor Scout position might well be sufficient to dissuade a reasonable worker from making a charge of discrimination. *See Burlington*, 548 U.S. at 70–71 (concluding that an employment action was materially adverse because the plaintiff was assigned more arduous and less prestigious work as a result); *Crawford*, 529 F.3d at 973 (concluding that an employment action was materially adverse because it denied the plaintiff a merit pay increase). Accordingly, the motion for summary judgment is due to be denied to the extent that it is predicated on the argument that the denial of a Motor Scout position did not constitute an adverse employment action.

To satisfy the causal-relationship element, "a plaintiff merely has to prove that the protected activity and the [adverse] action are not completely unrelated." *Olmsted v. Taco Bell Corp.*, 141 F.3d 1457, 1460 (11th Cir 1998); *see also Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004). To do so, a plaintiff must at a minimum show that "the person taking the adverse action was aware of the protected expression." *Bass v. Bd. of Cnty. Comm'rs, Orange Cnty., Fla.*, 256 F.3d 1095, 1119 (11th Cir. 2001), *overruled on other ground by Crawford v. Carroll*, 529 F.3d 961 (11th Cir. 2008). Such awareness may be established either by direct evidence or by circumstantial evidence. *See Bechtel Constr. Co. v. Sec'y of Labor*, 50 F.3d 926, 934 (11th Cir. 1995); *Clover v. Total Sys. Servs., Inc.*, 176 F.3d 1346, 1354 (11th Cir. 1999).

In the present case, Officer Bell establishes through direct evidence that Chief Duff, the decision maker, was aware that Officer Bell engaged in protected activity and that Chief Duff took an adverse employment action against Officer Bell because Officer Bell engaged in

protected activity. In his deposition, Officer Bell testified that "[he] didn't receive a motorcycle till later because *Deputy Chief Duff said since we filed a grievance and the EEOC complaint[,] no movement would be made on the motor scouts*." (Doc. 41-1, at 34) (emphasis added). Accepting this testimony as true and viewing it in a light most favorable for Officer Bell, this court concludes that this showing is sufficient to meet the causation requirement for the purposes of a prima facie retaliation case.

Because Officer Bell has proven his prima facie case, the burden now shifts to the City to articulate a legitimate reason for the adverse employment action. *See Sullivan v. Nat'l R.R. Passenger Corp.*, 170 F.3d 1056, 1059 (1999). The City, however, fails to offer any explanation of its decision to require Officer Bell to repeat Motor Scout School prior to becoming a Motor Scout. As such, the analysis on this claim is complete, and the City is not entitled to summary judgment.

## IV.  CONCLUSION

For the reasons discussed above, the court FINDS that Defendant's motion for summary judgment is due to be GRANTED as to Plaintiff's § 1983 claim and Title VII Disparate Treatment claim. The court FINDS that Defendant's motion for summary judgment as to Plaintiff's Title VII retaliation claim is due to be DENIED. A separate Order to this effect will be filed simultaneously.

DONE and ORDERED this 4th day of February, 2015.

_____
KARON OWEN BOWDRE
CHIEF UNITED STATES DISTRICT JUDGE